**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                PLAINTIFF

v.                                No. 4:12CR00097 JLH

KELLI JO CRAIG,
a/k/a Kelli Jo Brock                                                 DEFENDANT

## OPINION AND ORDER

Kelli Jo Craig was charged in, and went to trial on, a two-count indictment. Count 1 charged that on or about September 8, 2010, she made a false statement to federal agents in violation of 18 U.S.C. § 1001. Count 2 charged that on or about August 10, 2010, she falsified a document with the intent to impede, obstruct, and influence the investigation of a matter that she knew was within the jurisdiction of the United States Postal Service, in violation of 18 U.S.C. § 1519. At trial, the jury acquitted Craig on Count 1 but convicted her on Count 2. Craig moved for a judgment of acquittal at trial, both at the close of the government's case and at the close of all the evidence, and she renewed that motion after the jury's verdict. *See* Document #45. For reasons that will be explained, that motion is granted.

On July 11, 2009, Craig, whose surname at the time was Brock, was shot. She reported that one of her ex-husband's friends, Robert Frederickson, broke into her house in Conway, Arkansas, and engaged her in a physical altercation the result of which was that she was shot in the leg with a pistol. Based on Craig's allegations, Frederickson was charged in the Circuit Court of Faulkner County, Arkansas, with crimes related to the shooting.[1] In preparation for that trial, the prosecutor

---

[1] During opening statement, the prosecutor said that Frederickson was charged with attempted murder. Defense counsel responded that the record would show that Frederickson was charged with first degree battery and kidnapping. No evidence was offered to show the crimes with which Frederickson was charged.

asked Craig to prepare a narrative of events that occurred during and around the time of the shooting. Craig authored such a narrative for the prosecutor, which described events that she said took place from May 2, 2009, through the alleged home invasion on July 11, 2009. Frederickson was tried and acquitted in March of 2010.[2]

A threatening letter, addressed to Craig, was mailed from Pine Bluff, Arkansas, on July 1, 2010, and delivered by the Postal Service to Craig's mailbox in Conway, Arkansas, on July 3, 2010. The letter referenced the shooting that had taken place in 2009. Craig provided the letter to the Conway police, who submitted it to the United States Postal Service for investigation. As part of the investigation into the threatening letter, United States Postal Inspector David Barrett and FBI Special Agent Al Land interviewed Craig on July 16, 2010.[3] During that interview, Barrett asked Craig to provide him a timeline of her whereabouts from the week before the letter was mailed through the date the letter was received. Document #44 at 9. He also asked Craig for a written statement regarding what had happened in the 2009 shooting.

Sometime between July 16 and August 10, 2010, Craig gave Barrett two documents. The first document was Craig's account of her whereabouts from June 27, 2010, through July 4, 2010. Craig was not charged with any crime relating to that document. At trial, Barrett testified that he had determined that Craig could not have mailed the threatening letter to herself, *see* Document #44 at 20, because the letter was mailed from Pine Bluff, Arkansas, on July 1, 2010, and he confirmed that

---

[2] Frederickson was arrested on July 11, 2009, and detained until trial. He testified that he was incarcerated for eight months and one day, which would place the trial in March of 2010. *See also* Document #22 at 2.

[3] Barrett and Land interviewed Craig again on August 10, 2010. FBI Special Agent Pat Halford interviewed Craig on September 8, 2010. Count 1 charged that Craig made a false statement to Halford during that interview.

2

Craig was not in Pine Bluff that day, as her narrative reported. The second document was the narrative that Craig had given to the Faulkner County prosecutor in preparation for Frederickson's trial. Count 2 charged that Craig falsified the second document: the description of events that occurred from May 2, 2009, through July 11, 2009, relating to the shooting.[4]

Federal Rule of Criminal Procedure 29(b) provides that a court may reserve decision on a motion for judgment of acquittal, proceed with the trial, and decide the motion after a jury returns a verdict of guilty. "If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). A court "must affirm a jury verdict if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt." *United States v. Clark*, 668 F.3d 568, 573 (8th Cir. 2012).

Eighteen U.S.C. § 1519 provides, "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both."

---

[4] The indictment on this charge states,
On or about August 10, 2010, in the Eastern District of Arkansas, Kelli Jo Brock aka Kelli Jo Craig did knowingly falsify a document, to wit: a statement of events of May 2, 2009[,] through July 11, 2009, with the intent to impede, obstruct, and influence the investigation of her receipt of a threatening letter through the United States Mail on or about July 3, 2010, a matter that the defendant knew was within the jurisdiction of the United States Postal Service, a department and agency of the United States, in violation of Title 18, United States Code, section 1519.

Document #1 at 2. The government's theory is that Craig shot herself and concocted the story of Frederickson's involvement to frame him.

Craig argues that even if the jury reasonably could have concluded that she falsified the document, the jury could not reasonably have concluded that she did so with the intent to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of the United States Postal Service or any other federal agency.

It is undisputed that Craig created the document at issue for the state prosecutor to use in preparation for the Frederickson trial, which was solely a state matter. The government concedes this point, *see* Document #46 at 8 ("[N]o federal investigation was contemplated when the May 2, 2009-July 11, 2009 statement of events was first written . . . ."). Nevertheless, the government contends that the document became relevant to the United States Postal Service's investigation into the threatening letter that began in July 2010, months after Craig created the document and gave it to the state prosecutor.

The Eighth Circuit has explained that § 1519's intent element encompasses three possible scenarios:

> (1) a defendant acts with intent to impede, obstruct, or influence the investigation or proper administration of a federal matter, (2) a defendant, in contemplation of a federal matter, acts with intent to impede, obstruct, or influence the investigation or proper administration of the matter, and (3) a defendant, in relation to a federal matter, acts with intent to impede, obstruct, or influence the investigation or proper administration of the matter.

*United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011). "[W]e do not think Congress, in expanding the scope of § 1519 beyond actions directed to a pending matter, eliminated the need for proof of intent to impede, obstruct, or influence a federal matter." *Id.* The *mens rea* of intent, however, does not extend to whether something is a federal matter – "[i]t is sufficient that the 'matter' is within the jurisdiction of a federal agency as a factual matter." *Id.* at 714. Even if the

4

"matter" is not within the jurisdiction of a federal agency when the document is falsified, to fall under § 1519's purview it must at least be relevant to a foreseeable federal investigation. *See id.* at 711. The court in *Yielding* explained why the statute does not criminalize actions absent an intent to impede, obstruct, or influence a federal matter. "If it did [criminalize actions taken without an intent to impede, obstruct, or influence a matter], then the statute would forbid innocent conduct such as routine destruction of documents that a person consciously and in good faith determines are irrelevant to a foreseeable federal matter." *Id.* By the same logic, the statute does not criminalize the act of falsifying a document if, at the time the document is falsified, it has no relation to any then-foreseeable federal matter even though at a later time the document becomes relevant to a federal investigation. *See United States v. McRae*, 702 F.3d 806, 837 (5th Cir. 2012) ("The connection between the defendant's conduct and an investigation might be so remote in some cases that the statute punishes innocent conduct.").

Here, when Craig gave the Faulkner County prosecutor the document to use in his preparation for the Frederickson trial, no facts existed that would have given the United States Postal Service jurisdiction over the investigation of the July 2009 shooting. Moreover, it is not suggested, much less proven, that at that time Craig could have foreseen that months later the document would become relevant to a federal investigation. Again, the letter—which created federal jurisdiction—was sent months after the Frederickson trial and was not sent by Craig.

The government, however, analogizes the facts of this case to those of *United States v. Moyer*, 674 F.3d 192 (3d Cir. 2012), arguing that because the document later became relevant to a federal investigation, it satisfies the requirement that the matter was within the jurisdiction of a federal agency. The facts of *Moyer* are materially different from the facts here. In *Moyer*, a jury convicted

5

Matthew Nestor, the Chief of Police of the West Mahanoy Police Department, of falsifying police reports from July 12, 2008, through March 30, 2009, related to the possible racially motivated killing of Luis Ramirez, a Hispanic man. *Id.* at 202-03. The court upheld Nestor's conviction, finding that the jury could have concluded that Nestor acted in contemplation of an investigation into the racially motivated killing on Ramirez and, because the FBI has jurisdiction over racially motivated killings, *see id.* at 206, the matter was within the jurisdiction of a federal agency. *Id.* at 210. Furthermore, the FBI took over the investigation near the end of July of 2008, only a couple weeks after the beginning of the eight-month-long period during which Nestor falsified reports. *Id.* at 211. Nestor falsified records with the intent to impede an investigation of a racially motivated killing, which at the time he falsified the records was a matter within the jurisdiction of the FBI (even if the FBI was not actually engaged in an investigation at the time). Here, on the other hand, assuming that Craig falsified the document that she gave to the Faulkner County prosecutor, she did so with the intent to influence a state prosecution of a crime over which neither the Postal Service nor any other federal agency had jurisdiction.

In view of the fact that the indictment charges that Craig falsified the document on or about August 10, 2010, the government's position appears to be that Craig's act of giving the document to Barrett and representing that it was factual constituted falsifying the document. Eighteen U.S.C. § 1519 does not make it a crime to make a false oral statement to a federal investigator; 18 U.S.C. § 1001 does that. Craig was indicted on one count of violating section 1001, but the jury found her not guilty of that charge; and she was not charged with violating 18 U.S.C. § 1001 when she told Barrett that the document was factual. Hence, Craig can be guilty of violating section 1519 only if the act of delivering a false document to a federal investigator constitutes falsifying the document.

6

The statute does not explain what is means to falsify a document. When terms in a statute are undefined, courts give them their ordinary meaning. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187, 115 S. Ct. 788, 793, 130 L. Ed. 2d 682 (1995). *Black's Law Dictionary* defines "falsifying a record" as "[t]he crime of making false entries or otherwise tampering with a public record with the intent to deceive or injure, or to conceal wrongdoing." *Black's Law Dictionary* 678 (9th ed. 2009); *see* James J. Brudney & Lawrence Baum, *Oasis or Mirage: The Supreme Court's Thirst for Dictionaries in the Rehnquist and Roberts Eras*, 55 Wm. & Mary L. Rev. 483, 509 (2013) ("Unlike general dictionaries that rely on citation files or electronic corpora to identify word usages, legal dictionaries such as Black's rely on judicial opinions as their primary citation source. . . . [T]his is closer to a prescriptive definitional approach in that judicial interpretations are self-conscious efforts by experts to establish what words are supposed to mean, rather than collected examples of word usage from a wider spectrum.").

*Black's* definition of "falsifying a record" does not include delivering a document to another person, nor does the case law. The case that most thoroughly explains the meaning of this phrase is *Russ v. Florida*, No. 4:02CV013-SPM, slip op. (N.D. Fla. Oct. 4, 2002), *adopted by* slip op. (N.D. Fla. May 30, 2003), *aff'd*, 104 Fed. App'x 150 (11th Cir. 2004). In *Russ*, Glendell Russ filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Id.* at 1. Russ had been convicted in a Florida state court of falsifying an official document, a check, under a Florida statute that did not define what it meant to falsify a document. *Id.* at 1-3. Russ, then a City Commissioner in Quincy, Florida, asked the City Commission to authorize the expenditure of $600 from his discretionary fund (money available for official use only) to purchase Christmas gifts for needy children in his district. The City agreed and issued a $600 check for Russ, payable to Toys-R-Us. Instead of using all $600

7

on toys for needy children, Russ bought $159 worth of toys for another customer at Toys-R-Us in exchange for that customer giving Russ $100. Russ paid for the toys for the needy children and the toys for the other customer with the $600 check. Russ did not alter the check. He was charged with falsifying the check because he did not use all $600 for an authorized purpose but represented to the City Commission that he did. The trial court set aside the jury's verdict based on the meaning of the word "falsify," cataloguing 100 state and federal cases and finding no basis for the State's interpretation of the word, *see id.* at 12 ("[O]ver 100 . . . cases reviewed from state and federal courts[] involved falsification by some alteration or tampering with the record so as to falsify the record."), but the appellate court reversed the trial court and the Florida Supreme Court denied further review. *Id.* at 2-3, 20-21.

The federal district court granted Russ's petition, adopting the magistrate judge's Report and Recommendation. The only document that Russ allegedly falsified was the $600 check, and Russ did not do anything to that document to make it false. *Id.* at 20-22. The court explained that the conventional definition of "to falsify [a document]" is "to alter the information contained in a document so that the information in the document no longer conveys the truth." *Id.* at 20. The court explicitly rejected the Florida state appellate court's broader definition of falsify that included Russ's causing "that check to misrepresent the actual amount spent for its authorized purpose." *Id.* at 21. The court held that the Florida state appellate court's definition was "unexpected and indefensible," and it therefore violated Russ's due process rights and was contrary to clearly established law. *Id.* at 24. The Eleventh Circuit affirmed. *Russ v. Florida*, 104 Fed. App'x 150 (11th Cir. 2004); *see also Goodwin v. McKune*, 174 P.3d 459, at *5-6 (Kan. Ct. App. Jan. 11, 2008) (unpublished decision).

8

Here, the government produced no evidence that Craig made any changes to the document that she is charged with falsifying after she gave it to the Faulkner County prosecutor. True, during the course of the investigation of the threatening letter she gave the document to Barrett and represented that it was factual. Yet, *Black's Law Dictionary*'s and *Russ*'s on-point definitions of "falsify a document" limit the term to making false entries or changing information contained in the document, which Craig did not do after she received the threatening letter.

The text of section 1519 also indicates that to "falsify a document" does not include Craig's act of delivering the document to Barrett. The familiar "canon of *noscitur a sociis* 'counsels that a word is given more precise content by the neighboring words with which it is associated.'" *Maracich v. Spears*, 133 S. Ct. 2191, 2201, 186 L. Ed. 2d 275 (2013) (quoting *United States v. Williams*, 553 U.S. 285, 294, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)). In section 1519, someone who "alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in" a document may be liable under the statute. 18 U.S.C. § 1519. When someone "alters, destroys, mutilates, . . . or makes a false entry in" a document, that person does so by physically changing the document. When someone "conceals" or "covers up" a document, that person does so by hiding or keeping that document from someone, in a functionally similar way to destroying or mutilating a document. Nothing in this list of prohibited actions suggests that the delivery of a previously prepared false document constitutes falsifying the document.

The legislative history of section 1519 also supports this interpretation. Section 1519 was enacted under Title VIII of the Sarbanes-Oxley Act of 2002. Pub. L. No. 107-204, 116 Sta. 745. Title VIII is referred to as the Corporate and Criminal Fraud Accountability Act of 2002. The Corporate and Criminal Fraud Accountability Act was enacted in response to the collapse of Enron

9

and the systematic destruction of documents by Enron Corporation and its accounting firm, Arthur Andersen. S. Rep. 107-146, at 2-5. The Act's purpose is in part "to provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or *alter or destroy evidence* in certain Federal investigations." *Id.* at 2 (emphasis added). The Senate Report explains that section 1519 is a "general anti shredding provision" that is meant to apply broadly "to any acts to destroy or fabricate *physical evidence*" to fill in gaps in the federal laws governing destruction or fabrication of such evidence. *Id.* at 14 (emphasis added) ("For instance, certain current provisions make it a crime to persuade another person to destroy documents, but not a crime to actually destroy the same documents yourself.").[5] The legislative history evidences concern with changes in or destruction of physical evidence, consistent with the view that falsifying a document involves acting on that document.

Even if the phrase "falsify a document" in section 1519 were susceptible to two reasonable interpretations—one interpreting the phrase to include delivery of a previously prepared false document without an accompanying change to the document itself and the other interpreting it to mean simply creating a false document or altering a document to make it false—the rule of lenity counsels that the term must be interpreted in favor of Craig. To ensure that criminal defendants have

---

[5] Senators Hatch, Thurmond, Grassley, Kyl, DeWine, Sessions, Brownback, and McConnell added these relevant additional views:
> In our view, section 1519 should be used to prosecute only those individuals who destroy evidence with the specific intent to impede or obstruct a pending or future criminal investigation, a formal administrative proceeding, or bankruptcy case. It should not cover the destruction of documents in the ordinary course of business, even where the individual may have reason to believe that the documents may tangentially relate to some future matter within the conceivable jurisdiction of an arm of the federal bureaucracy.

S. Rep. 107-146, at 27.

fair warning that a statute proscribes their actions, the canon of strict construction of criminal statutes, or the rule of lenity, "'requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.'" *United States v. Bruguier*, 735 F.3d 754, 769 (8th Cir. 2013) (quoting *United States v. Santos*, 553 U.S. 507, 514, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008)).

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

*Santos*, 553 U.S. at 514, 128 S. Ct. at 2025.

Again, the evidence does not show that Craig made any changes to the document after she gave it to the state prosecutor in preparation for the Frederickson trial. Craig's receipt of the threatening letter, four months after the Frederickson trial, gave rise to an investigation by the United States Postal Service; but neither the matter (the threatening letter) nor the investigation of it was foreseeable when Craig created (and thus falsified) the document.

**CONCLUSION**

Craig may have falsified the narrative that she delivered to the state prosecutor in preparation for the Frederickson trial—this opinion assumes that she did. At the time she falsified that document, however, she did so with the intent to influence a state prosecution, not to impede, obstruct, or influence the investigation of a matter within the jurisdiction of an agency or department of the United States. When Craig falsified that document, no federal investigation was ongoing, nor was one foreseeable. Presumably, Craig intended to influence the federal investigation of the threatening letter when she delivered the false narrative to Barrett, but she did not falsify the document at that

11

time—the document had been falsified months earlier. Taking all facts in the light most favorable to the verdict, a jury could not reasonably find that Craig falsified a document with the intent to impede, obstruct, or influence the investigation of a matter that was within the jurisdiction of a department or agency of the United States. Therefore, Kelli Jo Craig's motion for judgment of acquittal is GRANTED. Document #45.

IT IS SO ORDERED this 26th day of February, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE